**IN THE COURT OF APPEALS OF IOWA**

No. 22-0482
Filed January 11, 2023

**IN THE INTEREST OF R.S. and D.S.,**
**Minor Children,**

**A.S., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Marion County, Steven Guiter, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Arielle M. Lipman of Lipman Law Firm, P.C., West Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Erin E. Mayfield, Assistant Attorney General, for appelle State.

Dusty Clements of Clements Law & Mediation, Newton, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to her two children, D.S., born in 2014, and R.S., born in 2019.[1]  We affirm.

Sometime in 2020, the mother left the family home, and the children remained with their father.  On October 6, 2020, the juvenile court ordered the temporary removal of the children from the home upon a finding that the parents could not provide adequate housing for the children and the parents' admissions of substance abuse.  The children were placed in the care of a relative, and on December 9, the children were adjudicated children in need of assistance (CINA).

The children both require parental consistency and professional services. The children have made great strides with their delayed development while in the care of their maternal aunt and have been integrated into that family.  Continuing in that placement offers permanence and stability.

In contrast to the children's gains, the parents made little to no progress toward their own goals of finding suitable housing, employment, transportation, and participating in substance-abuse and mental-health treatment.  In October 2021, the permanency goal for the children was changed from reunifying with a parent to termination of parental rights and adoption.

The termination hearing was held on February 23 and 24, 2022.  The mother acknowledged the children could not be returned to her at present but she asked for an additional six months to reunify with them, noting the progress she had made recently, particularly in the two weeks before the hearing.  She testified

---

[1] The father's rights were also terminated; he does not appeal.

she had made arrangements to have more frequent virtual contact with the children, had her driver's license and transportation, was employed, was going to sign papers the next day to buy a home on contract, had reengaged with substance-abuse and mental-health counseling, and had found a more suitable living situation.[2]

The social work case manager could not recommend allowing the mother additional time and recommended termination of the mother's rights. She testified the mother had a recent positive drug screen and was in the same situation as at the beginning of the juvenile proceedings. When asked if the mother's recent progress was enough to "give her six more months," the case manager stated:

> I question if everything is true, number one, and number two, is this is again when we go back to repeated conversations and trying to hear where [the mother] is at and what she needs and how to help her meet that. She's very confident in her ability and even willing to say absolutely I can do A, B, and C. The problem is in well over a year there has never been a follow-through. There's never been any consistency. It is the same conversations month after month after month.

The case manager also expressed concern about the older child's statements that the child was supposed to keep secrets and "Mommy says I'm coming home soon." The case manager believed the mother had placed the child in a "terrible position" and offered the child false hope. She testified, "These [children] need a definitive, permanent placement, permanent home."

The children's guardian ad litem (GAL) supported termination of parental rights to allow the children the permanency and stability they needed. The GAL

---

[2] Mother testified she lives in her father's mechanical shop on her parent's property and has access to her parents home.

noted, "[F]rom a practical standpoint both parents have had four months since the [permanency] goal changed, and I don't think up until the last couple of weeks that the mother has made progress enough to warrant a six-month extension."

The juvenile court found clear and convincing evidence to terminate the mother's rights to pursuant to Iowa Code section 232.116(1)(f) (2022) (D.S.) and (1)(h) (R.S.). It found a six-month extension was not appropriate, termination and adoption was in the children's best interests, and no statutory exception was applicable to avoid termination.

The mother appeals, asserting the court should have granted her an additional six months, termination of her parental rights was not in the children's best interests due to their placement with the maternal aunt and the closeness of the parent-child relationship, and that establishing a guardianship with the maternal aunt was a more appropriate disposition.

Review of termination proceedings is de novo and follows a three-step analysis: (1) do grounds for termination exist under Iowa Code section 232.116(1)?; (2) do the section 232.116(2) best-interests factors support termination of parental rights?; and (3) does any permissive factor in section 232.116(3) weigh against termination? *In re P.L.*, 778 N.W.2d 33, 40–41 (Iowa 2010). We need not address the first step because the mother does not dispute that grounds for termination exist. *Id.* at 40.

The mother has done "too little, too late." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). She continues to have unresolved substance-abuse and mental-

health issues after more than sixteen months and still cannot provide the children a safe and stable home. *See id.* ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."). The mother asks for more time, which may be appropriate only if the court is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The conditions for reunification have been known to the mother throughout these proceedings, and she has been unable to follow through. Her lack of follow-through during these juvenile proceedings does not bode well for her promises of future performance. *See In re B.H.A.*, 938 N.W.2d 227, 233 (Iowa 2020) (noting a parent's past performance may indicate the quality of the future care that parent can provide). We decline the mother's request for more time. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("[W]e cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)).

Section 232.116(3) sets out permissive factors that allow the juvenile court not to terminate parental rights even if grounds exist. *Id.* at 113. The mother asserts two exceptions should apply to avoid termination—the children are in the care of a relative and the closeness of the parent-child bond. *See* Iowa Code § 232.116(3)(a), (c). Here, the juvenile court found "no exceptions exist, or that any applicable exceptions do not outweigh the best interests of the child[ren] which

require termination of the parent's parental rights so that permanency and stability can be provided to the child[ren]."  We agree.

Both the caseworker and the GAL recommended termination of parental rights and adoption, noting the continued ambiguity of a parent-child relationship during guardianship proceedings which deprive the child of permanency and an on-going sense of belonging and stability.  These are factors underlying the oft-stated principle that "a guardianship is not a legally preferable alternative to termination."  *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (citation omitted) ("If the court transferred guardianship and custody to the child's maternal grandparents, they would have to report to the court at least annually, and the guardianship would not terminate until the child reaches the age of majority . . . .").  We affirm the termination of the mother's parental rights.

**AFFIRMED.**